The People of Puerto Rico, Plaintiff and Appellee, *v.* Domingo Torres, Defendant and Appellant.

No. 9143. Argued April 8, 1942.—Decided April 21, 1942.

*F. Pérez Regis, Juan Rodríguez de Jesús,* and *Raúl Matos* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

In this case the jury, after deliberating for several hours, through the foreman Agrait notified the court that they desired to return to the courtroom, and the following incident occurred:

"Let the jury be recalled.

(The jury returned at 10:35 p. m.)

"Judge:

"The marshal has telephoned me at the request of Mr. Agrait. Have the gentlemen of the jury agreed? Do you need any further instruction?

"Mr. Agrait, foreman of the jury:

"It is a matter of obstinacy on the part of a juror.

"Judge: This is not a matter where there should be any obstinacy. The court is unaware of the reasons therefor, nor does it wish to know who is the obstinate juror. What the court desires is that such a thing should not happen if that is what prevents agreement upon a verdict. The determination should be made by the gentlemen of the jury in accordance with the evidence and the instructions from this court and without regard to any other question outside

the oath taken by them. Of course, they are not sworn in to play or to do any futile thing; it is a serious oath. Any juror who violates his oath commits a public offense, and the court may punish him as for contempt. Such cases have occurred in this island. That unfortunate situation has sometimes arisen.

"The court refuses to go into the details of the matter. The business of the jury is secret. The court does not wish to know nor is it interested in knowing who it might be. The only thing that interests the court is the seriousness of the jury function. When men occupy those places they do not do so as individuals but as a tribunal, constituted in the same way as a legislative or a municipal assembly or any collective body and its members are the representatives of the Ponce district. The administration of justice is a serious affair. You must know and you do know what is the mission of a jury. No dispute should ever arise; otherwise you should be failing in your duty as jurors. The court does not wish now to investigate or to know anything. *The court may or may not, once the jury is dismissed or dissolved, by legal means, investigate this matter, but the court feels that there is no necessity to make any investigation.*

"Mr. Agrait: (Foreman of the jury)

"That is what I think. Some statements were made upstairs. That is what I think. I must not make any statements that might be prejudicial to somebody.

"Judge: It is a jury secret.

"Mr. Agrait: We have reached that conclusion; we know that no verdict will be reached.

"Judge: I have only heard the word obstinacy. I know what it means. In many cases obstinacy should find no place in the performance of public functions. Obstinacy should only exist in dealings between men, between individuals as such, but not in collective bodies of this kind; in judicial bodies especially, like the jury, obstinacy should not occur. Obstinacy of any sort should be put aside. Jurors should only consider questions of fact, the evidence submitted and admitted, and the instructions from the court. Should any member of the jury entertain an opinion which is in conflict with that of the others, he should first state the reasons for his opinion, should explain his reasons, and then the matter should be discussed. The discussion should seek to convince him. If they need any further instruction the court has power to give it to them. If it is the repetition of any part of the testimony, the court can direct the stenographer to read out the testimony in question. There

should be no obstinacy in the deliberations of the jury. If any juror says: 'I will not agree to any verdict,' and he is asked: 'Why will you not agree to any verdict,' and he answers: 'Because I do not want to,' then he means to be obstinate and that constitutes contempt of court. It is a serious matter. If anyone did that, the court, apart from any other liability incurred, might strike out his name permanently from the jury list. The court might thus proceed against a person who assumed such stubborn attitude. The court thinks that the jury should continue their deliberations and try to reach an agreement. They should form their convictions free from any personal animosity. Each juror is not merely an individual, he is a member of a tribunal selected to try questions of fact. He should disregard any personal feelings and bear very much in mind that he is a member of the jury. Official matters are serious things.

"The court and public opinion are mindful of the conduct of the jury. They know that no matter how much a thing may be concealed, it will eventually come out, if not today, tomorrow, or the day after tomorrow. Such a disclosure would not be advisable. The jury might become liable to censure on that account, which censure would individually affect the members of the jury who are acting in the name of the court. This is what I say: Let the jurors return to the jury room and proceed with their high duty. Can you reach an agreement?

"Jurors: We can.

"Atty. Pérez Regis: (for defendant)

"We take exception on account of the statement made just now.

"Judge: Let it be so entered. The court takes a recess until the return of the jury." (Rec. 176–180) (Italics ours.)

The appellant maintains that the following paragraphs from the statements made by the judge to the jury constitute an instigation and threat tending to influence the jury to bring in a verdict of guilty:

"If any juror says: 'I will not agree to any verdict,' and he is asked: 'Why will you not agree to any verdict?' and he answers: 'Because I do not want to,' then he means to be obstinate and that constitutes contempt of court. It is a serious matter. If anyone did that, the court, apart from any other liability incurred, might strike out his name permanently from the jury list.

" " * * * * * . * * *

"The court and public opinion are mindful of the conduct of the jury. They know that no matter how much a thing may be concealed, it will eventually come out, if not today, tomorrow, or the day after tomorrow. Such a disclosure would not be advisable. The jury might become liable to censure on that account, which censure would individually affect the members of the jury who are acting in the name of the court. . . ."

In our judgment, the statements made by the judge could in no way prejudice the rights of the accused. Such statements specifically refer to the hypothetical case of a member of the jury who capriciously and arbitrarily refuses to participate in the deliberations of his colleagues. Any juror who thus conducts himself, not only obstructs the administration of justice, but also violates the oath which he took as such juror to try impartially the cause pending before the court and to render an impartial verdict in accordance with the evidence.

If the juror charged with obstinacy was really acting in good faith and maintaining his opinions conformable to his conscience, he had nothing to fear by reason of what the judge might have said, inasmuch as his case was different from that which the court had in mind. The court's statement that public opinion was mindful of the conduct of the jury and that no matter how well concealed a thing might be it will always be found out, and that the jury might become liable to censure on that account, did not suggest to the dissenting juror that he was bound to agree to a verdict of guilty if he actually believed that the accused was not guilty.

The appellant also urges that the judge should not have delivered such instructions without any request therefor from the jury, the prosecution, or the defendant. We must not lose sight of the fact that the instructions involved do not relate to the law applicable to the case but to the general obligations which the law imposes upon the jurors. It having come to the knowledge of the judge that there might have been obstinacy on the part of one of the jurors,

it became his duty to urge the jury in general·terms, which he did accordingly, to faithfully comply with their duty, as required by law, and with the oath individually taken ·by them on being accepted to try the case. Se *People* v. *Cherry*, 158 P. 335, and especially the monograph entitled *"Comments and Conduct of Judge Calculated to Coerce or Influence Jury to Reach Verdict in Criminal Case,"* which appears in 85 A.L.R. 1420, and which should be read by members of the legal profession in general and especially by district judges.

For the reasons stated, the appeal should be denied and the judgment appealed from affirmed.

Mr. Justice Travieso did not participate herein.